UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ROBERT WORLITZ, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:18 CV 1974 CDP |
| BOARD OF TRUSTEES, DISTRICT #9, I.A.M.A.W. PENSION AND WELFARE TRUST, et al., | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

On June 22, 2015, plaintiff Robert D. Worlitz sustained an injury on his employer's premises. After the injury, Worlitz requested medical and disability benefits from the defendants in this case, the Board of Trustees of District #9, International Association of Machinists and Aerospace Workers Pension and Welfare Trust. The Trust denied his request. Consequently, Worlitz filed this lawsuit seeking a declaratory judgment of his entitlement to past and future benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a) *et seq*. Pending before me is the Trust's motion for summary judgment on Worlitz' claims. The undisputed evidence shows that (1) the injury Worlitz sustained is not covered by the governing rules of the Trust's welfare plan, and (2) Worlitz is no longer a covered employee under the welfare plan, and so he has no

entitlement to future benefits. I will grant the defendants' motion for summary judgment.

## Legal Standard

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the evidence in the light most favorable to the nonmoving party and accord him the benefit of all reasonable inferences. *Scott v. Harris*, 550 U.S. 372, 379 (2007). The movant bears the initial burden of demonstrating the absence of an issue for trial. *Celotex*, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in his pleadings but must, by affidavit or other evidence, set forth specific facts showing that there is a genuine issue of material fact. *Id*. at 324; *Torgerson*, 643 F.3d at 1042. A factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The first step in evaluating a denial of benefits claim under ERISA is determining the appropriate standard of review. *Goewert v. Hartford Life & Acc.*

*Ins. Co.*, 442 F. Supp. 2d 724, 727 (E.D. Mo. 2006). De novo review is appropriate unless the plan grants its administrator discretionary authority to determine benefit eligibility or construe the terms of the plan. *Janssen v. Minneapolis Auto Dealers Ben. Fund,* 447 F.3d 1109, 1113 (8th Cir. 2006) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). If a plan gives discretionary authority to a plan administrator, the plan administrator's decision is reviewed under a deferential abuse of discretion standard. *Id.*

The Trust's welfare plan is governed by the policies and procedures set forth in the Trusts' Plan Document and Summary Plan Description (SPD). ECF 18-2 at pg. 2; Aff. of Debbie Watson, ECF 18-1. The SPD grants the plan administrator discretionary authority to both determine eligibility for benefits and interpret the provisions of the SPD:

> The individuals and entities charged with reviewing appeals shall have discretionary authority to rule on all appeals and their decisions shall be final and binding on all parties . . . . Benefits will be paid only if the reviewing party determines in their discretion that the applicant is entitled to them. The reviewing party shall have discretion to make determinations of fact, interpret all documents and other matters pertaining to the appeal; to determine eligibility for benefits, and to exercise such authority as set forth in this Summary Plan Description.

ECF 18-2 at pg. 68. Accordingly, a deferential abuse of discretion standard governs my evaluation of the Trust's determinations concerning both Worlitz' eligibility and the Trust's denial of his benefits claim.

3

**Evidence before the Court on the Motion**

The following undisputed facts are drawn from the parties' pleadings, affidavits, and attachments to those affidavits.

A. <u>Worlitz' Claims</u>

Worlitz sustained an injury to his knees on June 22, 2015. Aff. of Robert Worlitz, ECF 20-29. At the time of injury, he was employed as a mechanic by Seeger Toyota, a car dealership located in St. Louis, Missouri. *Id*. Worlitz explains the injury as follows: "I stepped into a depression/hole in the pavement of Seeger Toyota, while pushing a car, thereby directly and proximately causing injuries to my right knee primarily, and also to my left knee." *Id*. On July 28, 2015, Worlitz underwent surgery on his right knee. *Id*. The surgery was ultimately unsuccessful; on January 27, 2016, Worlitz filed a workers' compensation claim in connection with the knee injury with the Missouri Department of Labor and Industrial Relations. Worlitz Workers' Compensation Claim, ECF 20-7.

On March 5, 2016, Worlitz quit his position at Seeger Toyota, and on April 1, 2016, he began working as a mechanic for John Bommarito Oldsmobile-Cadillac-VW, a car dealership located in St. Peters, Missouri. ECF 20-29 at pg. 2. In or after April 2016, Worlitz informed the Trust that he had a pending workers' compensation claim for the knee injury. *Id*. SPD § 8.F.26 permits the Trust to

advance medical expenses for a covered employee's work-related injuries if the employee has a pending workers' compensation claim.[1]  Pursuant to § 8.F.26, the Trust advanced medical expenses to Worlitz after the parties agreed to execute a lien on his workers' compensation settlement.  Def.'s Statement of Uncontroverted Material Facts, ECF 18 at pg. 3.

On September 9, 2016, Worlitz and Seeger Toyota settled his workers' compensation claim, and Worlitz reimbursed the Trust in full for the funds it had previously advanced.  ECF 20-29 at pg. 5.  On September 29, 2016, Worlitz filed a separate lawsuit against several third party contractors alleging "defective construction on the premises of [Worlitz'] employer, Seeger Toyota at the time of his initial injury on 6/22/2015."  Pltf.'s Second Amended Petition, ECF 12 at pg. 3.  That lawsuit, *Worlitz v. Diestelkamp LLC, Lamke Trenching and Excavating and Electrical and Data Service Company*, #16SL-CC03601, is currently pending in the Circuit Court of St. Louis County.  *Id*.

Worlitz' injuries worsened over the course of the following year, and on April 10, 2017, Worlitz was terminated from his position at Bommarito because of

---

[1] "The Plan may pay [medical expenses] during the pendency of a Covered Individual's workers' compensation case if the Covered Individual executes a lien in favor of the Plan.  The lien will require full reimbursement of amounts paid out by the Plan in connection with the work-related injury if the Covered Individual is successful in the workers' compensation case." ECF 18-1 at pg. 3.

"substantial problems with [his] ability to walk, bend, stoop or kneel." *Id*. Worlitz continues to need medical treatment as a result of the 2015 injury.

On June 14, 2017, Worlitz wrote to the Trust requesting that the Trust "extend and authorize further medical care and weekly disability benefits" during the pendency of his third party lawsuit. ECF 18 at pg. 5. In his request, Worlitz offered to sign another subrogation and reimbursement agreement. *Id*. The Trust denied coverage and declined to enter into a subrogation agreement after determining that his injury occurred at work and had been adjudged to be covered by Missouri's workers' compensation law. *Id*. Worlitz appealed the denial of coverage on August 22, 2017, and the Board of Trustees denied his appeal by written decision on December 1, 2017. *Id*. Following the Trust's denial, Worlitz filed the instant lawsuit for which the Trust now seeks summary judgment.

B. <u>The Trust</u>

The Trust is a self-funded multiemployer welfare benefit plan within the meaning of ERISA, 29 U.S.C. §§ 1002(1), (3), and (37), as amended, and was created for the purpose of providing health insurance and disability benefits to participants. ECF 18-1. The Trust was established pursuant to Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), by defendant District #9, I.A.M.A.W., a labor union, and by employers who are signatories to collective bargaining agreements with the union. *Id*. The Trust is administered by three

union-appointed Trustees and three employer-appointed Trustees; defendants Mark Conner, Dave Weaver, and Jason Tetridick currently serve as the union-appointed Trustees. *Id*. The SPD sets forth a comprehensive description of the benefits provided by the Trust, the rules for determining eligibility for those benefits, and the procedures concerning reimbursement and subrogation for third party and workers' compensation claims. Pltf. Resp. to Def. Statement of Material Facts, ECF 20.

The eligibility requirements for participation in the Trust are set forth in § 3 of the SPD. ECF 18-1 at pg. 2. A covered employee's medical and weekly income coverage begins either: 1) on the first day of the first calendar month that commences coincident with or immediately following the commencement of covered employment; or 2) the first calendar day of the calendar month for which contributions are owed on the covered employee pursuant to the particular collective bargaining agreement the employer signs. *Id*. A "covered employee," as defined in § 2, is an employee "who is covered by and currently works under a collective bargaining agreement between a contributing employer and [the union] . . . and for whom the employer is obligated to make contributions to the Welfare Trust . . . ." *Id*.

A covered employee's eligibility automatically terminates on the earliest of 1) the last day of the calendar month during with the individual ceases to be

7

employed in covered employment (or, if later, the last day of the calendar month in which the employer is obligated pursuant to a collective bargaining agreement to make contributions on behalf of the individual); or 2) the last day of the last calendar month for which contributions are received on an individual's behalf. *Id.* at pg. 5.

## Discussion

Worlitz' second amended complaint, as elaborated in his memorandum in opposition to the Trust's motion for summary judgment, relies exclusively on SPD provisions §§ 1.D and 11 to support his claim for further medical care and disability benefits: "Plaintiff submits that the third party case is still subject to the reimbursement and subrogation provisions of [§§ 1.D and 11.A], providing for reimbursement of medical and disability benefits paid by the Trust for third party claims, such as the current litigation pending in St. Louis County." Pltf.'s Memorandum in Opposition, ECF 19 at pg. 6. Citing these provisions, Worlitz asserts that the Trust's decision to deny his request for subrogation and reimbursement on his third party negligence claim is so arbitrary and capricious as to amount to an abuse of discretion. *Id.* at pg. 13. Worlitz further asserts that the Trust's refusal to enter into a subrogation agreement is "inconsistent with the goals of the Plan to provide benefits to the covered employee, and at the same time, provide for conservation of assets by reimbursement and subrogation." *Id.*

8

There is no genuine dispute as to the cause and work-related nature of Worlitz' injury. On June 22, 2015, Worlitz was injured on Seeger Toyota's premises, while in the employment of Seeger Toyota, as he was performing an employment-related duty. ECF 20-29. Worlitz repeatedly admits that his pending third party lawsuit stems from that same injury.[2] In light of his admissions, the Trust's determination that Worlitz' injury was work-related does not constitute an abuse of discretion. While there are indeed "different issues, parties and concepts of liability"[3] in Worlitz' third party action and his in workers' compensation case, the underlying facts of his *injury* remain the same—merely pursuing a third party negligence claim does not retroactively alter the facts of the injury itself. To the extent Worlitz suggests otherwise, his apparently novel contention is entirely unsupported by case law.

Further, Worlitz' selective reading of the SPD ignores the plain language of the document. Section 1.D is merely a summary of the SPD's reimbursement and subrogation provisions. ECF 18-2 at pg. 2-3. The brief introduction in § 1.D concludes by directing readers to the comprehensive subrogation and reimbursement provisions contained in § 11. *Id*. at pg. 3. The summary in § 1.D

---

[2] *See* ECF 20-29 at pg. 6 ("[T]his third party claim is a separate, incidentally related, claim for injuries I sustained on 6/22/2015"); ECF 19 at pg. 1 ("This case arises out of a work-related accident when Plaintiff sustained injuries on 6/22/2015"); *Id*. at pg. 11 (". . . the separate third party case, which arises out of the same incident [as the workers' compensation claim]"); *Id*. at pg. 12 (". . . the Trustees have 'locked onto' the original work-related injury . . . .").
[3] ECF 19 at pg. 4

does not establish any additional or separate subrogation and reimbursement provisions, but is to be interpreted consistently with the provisions contained in § 11 as "part of an integrated whole." *Wilson v. Prudential Ins. Co. of Am.*, 97 F.3d 1010, 1013 (8th Cir. 1996). Section 11 of the SPD is titled "Plan's Rights to Subrogation and Reimbursement." *Id*. at pg. 57. The title is followed by an asterisk which directs to a footnote reading: "**Please Note**: This Section does not apply to work-related injuries. The Plan simply does not cover work-related injuries." *Id.* (emphasis in original). Worlitz admittedly sustained a work-related injury, and that work-related injury is the basis for his third party negligence action, so § 11 does not provide legitimate grounds for his claim.

The Trust's written decision denying Worlitz' appeal, however, did not cite the § 11 footnote, but instead cited the more explicit language contained in § 8.F.26 of the SPD:

> **No major medical benefits of any sort are payable for any of the following**:
> 
> …
> 
> 26. Charges for the treatment of any illness or injury that arises out of or in the course of any employment for any employer or any self-employment or for which the individual is entitled to benefits under any worker's compensation or occupational disease law or which the individual receives any settlement from a worker's compensation carrier or a self-insured employer.

Appeal Decision, ECF 18-6 (emphasis in original). Again, the language of the SPD is plain, unambiguous, and consistent with § 11; no benefits are available for

10

any "injury that arises out of or in the course of any employment for any employer," nor for any injury "for which the individual receives any settlement from a worker's compensation carrier." Worlitz' injury arose in the course of his employment, and that same injury previously resulted in a workers' compensation settlement.

ERISA requires that welfare benefit plan fiduciaries discharge their duties in accordance with the governing documents of the plan. 29 U.S.C. § 1104(a)(1)(D). Accordingly, the Trust's refusal to enter into a subrogation and reimbursement agreement on his third party claim does not constitute an abuse of discretion, but rather reflects the Trust's adherence to the clear provisions of the SPD, and by extension, its observance of its fiduciary duties under ERISA. To the extent Worlitz challenges the legal propriety of the SPD's work-related injury exclusion as contrary to ERISA policy, I agree with defendants that the holding in *Wilson*, supra, supports its validity. *Wilson*, 97 F.3d at 1014.

Further, it is undisputed that Worlitz ceased to be a "covered employee" under the SPD on July 31, 2017, so he is not entitled to any benefits from the Trust after that date. ECF 20 at pg. 19; ECF 18 at pg. 5. Worlitz' last day of employment for Bommarito was April 10, 2017, so his coverage should have ended on April 30, 2017 according to SPD § 4.A.1. However, because Bommarito did not notify the Trust until early August that Worlitz' employment had actually

been terminated in April, the Trust did not terminate his eligibility until the effective date of July 31, 2017. Def.'s Reply to Pltf.'s Memorandum in Opposition, ECF 21 at pg. 2. While Worlitz disputes the factual circumstances and timeline of his termination from Bommarito, he does not dispute the operative fact that the Trust terminated his coverage under the welfare plan on July 31, 2017. ECF 20 at pg. 7. More fundamentally, even if Worlitz was still eligible for continuing benefits—which he is not—the Trust's denial of Worlitz' claim for ongoing medical and disability benefits did not constitute an abuse of discretion.

Finally, Worlitz alleges that he should have been provided a COBRA notification upon termination of eligibility. ECF 20 at pg. 7. Because he did not raise the COBRA claim in his initial, first amended, or second amended complaints, I will not consider it now.

In conclusion, the Trust's decision not to enter into a subrogation agreement for Worlitz' third party claim was not an abuse of discretion, but rather a straightforward application of the SPD's unambiguous provisions. Further, because Worlitz has not been a covered employee since July 31, 2017, the Trust's determination that he not is entitled to any future medical or disability benefits was not an abuse of discretion.

As there are no remaining issues of material fact and the Trust has shown that it is entitled to judgment as a matter of law,

**IT IS HEREBY ORDERED** that Defendants Board of Trustees, et al.'s Motion for Summary Judgment [16] is **GRANTED.**

An appropriate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of November, 2019.